CLERMONT CRAVAT COMPANY, APPELLEE, V. HERSCHEL A. ECKHARD ET AL., APPELLANTS.

FILED JANUARY 29, 1932. No. 27878.

*Burkett, Wilson, Brown, Wilson & Van Kirk*, for appellants.

*F. L. Bollen, contra.*

Heard before GOSS, C. J., DEAN and EBERLY, JJ., and BLACKLEDGE and MESSMORE, District Judges.

BLACKLEDGE, District Judge.

This action was instituted in the district court for Saline county by the plaintiff, appellee, for the purpose of setting aside a conveyance of a business lot and property situated in Friend, Nebraska, made by Conrad C. Eckhard to his three children, Herschel A. Eckhard et al., defendants herein, upon the ground that such conveyance was made in fraud of creditors, including the plaintiff.

The case is ruled by well-settled principles of law and the matters for determination are questions of fact. For an understanding of the situation as it is disclosed by the record, a brief résumé must be given of the material facts, and this will be done without extensive quotation of particular testimony, but by giving in condensed form the salient features of it sufficiently to illustrate the conclusion necessarily reached.

Conrad C. Eckhard had been a merchant engaged principally in the men's clothing business operating a number of different stores and during a portion of the period as many as three stores at the same time. These stores were located at Lexington, Geneva, and McCook, Nebraska, Atwood, Kansas, and Holyoke, Colorado. Also during a part of the time he undertook to develop at Friend, Nebraska, a plant for the manufacture and promotion of an automatic egg turner for an incubator company, in which he lost some $16,000; also during the time he made investments in a tract of 160 acres of land in Brown county, South Dakota, and an interest in a tract of some 400 acres near Holyoke, Colorado. He also owned a residence property and a store building in Friend, Nebraska, which is the property in controversy herein, and was engaged there in the general mercantile business. His wife, Cora Isabelle Eckhard, mother of the children, died at Friend in 1920. He continued to reside at Friend until shortly before November, 1924, at which time he remarried, and thereupon took up his residence in Denver, Colorado, where he continued to reside until the time of trial. The children did not go with him to Denver, but remained at Friend, Nebraska, in care of an aunt, Amelia Bulwan, occupying the residence property, of the value of approximately $5,000, at Friend, which property was before his second marriage deeded by him to Mrs. Bulwan and the two younger children; also about the time of his second marriage he sold his business at Lexington and at Friend, liquidating most of his indebtedness of $16,000 to the First National Bank, the balance being liquidated from the sale of his business

at Geneva. This left him operating a store at Atwood, Kansas, and at Holyoke, Colorado, and he was engaged in a sort of jobbing business in neckwear, operated from his residence in Denver, in which he had a small amount, two or three hundred dollars, invested; he also yet retained his South Dakota land which, however, was mortgaged for $3,500 to the Merchants & Farmers Bank at Friend, and an interest with four others in the land near Holyoke in which he states he had invested about $4,000. These investments had been made during the war period, about 1917 and 1918.

The foregoing, with the additional fact that, during the summer and fall of 1926, domestic trouble developed between Conrad C. Eckhard and his then wife, which reached its climax about the following February, and in which some sort of a separate maintenance decree, which is referred to but not clearly disclosed by the evidence, was rendered in the Colorado court, fairly shows the debtor's situation, as disclosed by the record at the time of the transactions immediately involved.

The deed of conveyance which is in controversy here was prepared at Friend, Nebraska, and bears date June 16, 1926. It is not witnessed and was acknowledged in Yuma county, Colorado, July 1, 1926, at about which time it was transmitted by mail by Conrad C. Eckhard to the Merchants & Farmers Bank at Friend apparently without any letter of instructions, received at the bank, placed in its file for safe-keeping, and there remained until about February 17, 1927, when, pursuant to a telegram from Conrad C. Eckhard to Mr. Nunemaker of the bank, the deed was forwarded to the recorder's office for record, was there recorded February 21, 1927, and returned to the bank. There is no direct evidence as to how or when the deed later got out of the possession of the bank. It was produced on behalf of defendants at the taking of the deposition of Conrad C. Eckhard in Denver on October 26, 1929. The only additional information as to the subsequent handling of the deed is what may be inferentially drawn

from the statements of Mr. Nunemaker in his testimony, that it was returned to them after recording, that he had no recollection how long they kept it after that, and "Q. What did you do with it finally? A. I don't remember whether—I think I delivered it to you, didn't I, Herschel?" Herschel, the son, later testified in the case, but neither he nor any one else makes any explanation of the actual disposition of the deed.

The indebtedness for which plaintiff's judgment was recovered was incurred for the purchase of merchandise by Conrad C. Eckhard in early October, 1926.

The defense raises two propositions: First, that there was a delivery of the deed at the time it was acknowledged and sent to the bank at Friend; second, that there was a trust created as between Conrad C. Eckhard, his former wife, and the children in fulfilment of which this conveyance was made.

The trust is claimed to arise from the fact that the first Mrs. Eckhard received from her father's estate, which was closed in Saline county in June, 1919, an inheritance of approximately $4,000, and that this money or part of it was invested in the property in controversy. She was afflicted with cancer and knew that she was soon to die. Upon an occasion at the table at meal time, about two weeks before her death, at which her husband, Amelia Bulwan, and the son, Herschel, were present, there was a conversation which is related by Mrs. Bulwan as follows: "A. Well, she wanted—she told him she would let him have that money, but she always wanted to have her children benefit from it. Q. Was anything said with reference to the store building in Friend in particular? A. Yes; she wanted the children to have that and the home so that they would always have something to live on. Q. What did he say? A. Well, he said he would fulfil her wishes."

The son, Herschel, in reference to the same matter, says: "Mother was greatly worried that at any time if Dad should remarry that things wouldn't go so well, and she asked that all her property, or all the money should be

turned into an investment that would protect the two chil-
dren; she figured at that time that I was out of school
that I should have my share, but I didn't need the pro-
tection that the other two did, and they should have in-
come property that would protect them, and also that the
house should be left to the children."

Conrad C. Eckhard tells it as follows: "A. She asked
me to deed this building and also the home at that time
to the children for what I owed her, and she deeded this
bank stock to me at that time also; and I was to reimburse
the children. She said she would feel a great deal better
if I would deed the home and the building to the children.
Q. Did you deed the home and the store building? A. I
did not at that time because I felt I was fairly well heeled
and secure, and did not think it was particularly necessary
at that time to do it. * * * Q. And you were to deed this
property for the money? A. For what I had gotten from
her. She said I had enough anyway and she would feel
a great deal better inasmuch as it was her estate if I would
do that, and I agreed to do it." He also testified, in ref-
erence to this money, that she loaned it to him and he
used it. He could not say positively whether this money
was actually put into the building, but at her death the
question came up. "She had also some bank stock in the
Dorchester bank, and she signed this over to me to take
care of the children, to afterwards give the children, and
she also asked me for the money that I owed her or to deed
the children the building for their protection." He did
not do so at that time and did not think it necessary because
at that time he had plenty of property and was not married.
She did not have any property in her name except the
stock of the Dorchester bank. They did not keep separate
accounts. He did not give her any note. She just simply
gave it to him and he deposited it to his own credit. She
loaned it to him. She said she wanted it understood that
it was hers and that she could have it whenever she wanted
it.

The foregoing references fairly reflect the whole testi-

mony upon that proposition of the only persons, three in number, who claim to know anything with reference to the alleged trust agreement. They were all members of the same family, and when it is recalled that this conversation is claimed to have taken place early in 1920 and that nothing was done toward carrying out the claimed oral agreement as to this particular property until some six years later, it is clear that the evidence produced falls far short of that necessary under such conditions to establish any such trust.

It is further to be observed, in reference to the deed and the circumstances surrounding it, that it is neither attested by a witness nor joined in by the wife of the grantor; that the Dorchester bank stock which is the only property shown to have ever been in the name of the first wife had been prior to her death transferred to Conrad C. Eckhard and at this time, in June, 1926, he sold the bank stock and testifies that he took the money to Wray, Colorado, and there with it took up a note that he had at a bank, and acknowledged the deed and sent it back to Friend. He testifies he does not know why he did not acknowledge the deed sooner, or why it was not recorded sooner, and that he did not have any reason at the time for not recording it and does not know why it was not recorded promptly. The son, Herschel, testifies that this was shortly after they had disposed of the business in McCook and that he had trouble there with the father's second wife because of her interference with that business. He also states that he and the father talked over the matter of recording the deed, and that the father said that it would just cause a fight for him and that he would prefer that it be not recorded. When asked further as to why the deed was later recorded in February, 1927, he stated that the second wife had sued his father for separate support and maintenance in Denver in a case which she won and he was to make certain provisions for her support and pay an amount for her separate maintenance. It is further made clear from the evidence that business affairs for

Conrad C. Eckhard which had been going badly were not going better, and that about this same time he was closing out and did close out his store business at Holyoke by auction and from the whole thing netted some fifty or sixty dollars. His business at Atwood after having suffered the levy of attachments, and in reference to which he made an assignment, was closed out and he realized nothing. The land near Holyoke never had produced any income and from its closing out he realized $200, which he was glad to get. The land in South Dakota was foreclosed and he realized nothing from it. He had just before his second marriage conveyed the home property in Friend for the use and benefit of his minor children, which so far as is disclosed they still have and which amounted in value to more than the money received from his dead wife's estate. Thereafter so long as he was able he caused to be contributed from his stores at Geneva, Atwood, and Holyoke an amount for the support of his children, who were in the care of Mrs. Bulwan. The record presents a perfect picture of a failing and insolvent debtor trying to save something from the wreck, but it wholly fails to support the theory either that there was a trust established in the property sought to be conveyed or that there was a delivery of the deed prior to its recording in February, 1927. The trial court found that the deed was not delivered until on or about February 21, 1927, and after the indebtedness, which is the foundation of plaintiff's judgment, was incurred, that the plaintiff was an existing creditor, that the deed was without any consideration moving from the grantees and was in fraud of the plaintiff's rights as a creditor and should be canceled and set aside. The evidence amply sustains the findings of the trial court, which are approved and adopted by this court, and the judgment of the trial court is

AFFIRMED.